UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ENTELA MACUKA and VASIL MACUKA,

          Plaintiffs,

v.

LE CRUSET OF AMERICA, INC. and
WILLIAMS-SONOMA, INC.,

          Defendants.
-----------------------------------------------------------x

**OPINION AND ORDER**

**18 Civ. 3820 (NG)(JO)**

**GERSHON, United States District Judge:**

Plaintiffs Entela Macuka and Vasil Macuka filed this action on July 2, 2018 against defendants Le Creuset of America, Inc. ("Le Creuset") and Williams-Sonoma, Inc. ("Williams-Sonoma"). The complaint alleges a variety of claims resulting from plaintiffs' purchase of six items of Le Creuset cookware, at least some of which were purchased at Williams-Sonoma. According to plaintiffs, the cookware was defective in that it contained "blemishes and/or discoloration [...] in the form of rust and/or nickel," (Complaint, Dkt. No. 1, at ¶ 31), and plaintiffs fear these defects may "cause dangerous side effects and injuries due to exposure to corrosive rust and/or nickel deposits." (Plaintiff's Memorandum in Support of Motion, Dkt. No. 21, at 2). On September 27, 2018, defendant Williams-Sonoma, Inc. filed a pre-motion conference letter in anticipation of a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) based on an alleged lack of personal jurisdiction and failure to state a claim. At the subsequent pre-motion conference on November 15, 2018, I *sua sponte* ordered plaintiffs to show cause how this court has subject matter jurisdiction based on my concerns that the allegations in the complaint do not appear to satisfy the amount in controversy requirement for diversity jurisdiction. (Transcript of November 15, 2018 Pre-Motion Conference at 20:2-4).

1

## FACTUAL BACKGROUND

Plaintiffs allege that they purchased a Le Creuset 9 ½ Quart Signature Cast-Iron Matte Oval Dutch Oven from Williams-Sonoma in or about May 2016. (Compl. at ¶ 26). Over a year later, in or about July 2017, plaintiffs noticed some discoloration, which they believed to be deterioration in the form of rust and/or nickel. (Compl. at ¶¶ 30-31). As a result of this observation, plaintiffs stopped using the cookware. (Compl. at ¶ 32). Seven months later, in or about February 2018, plaintiffs purchased a Le Creuset 7 ¼ Quart Signature Cast-Iron Matte Round Dutch Oven from Williams-Sonoma. (Compl. at ¶ 33). According to plaintiffs, before using this cookware, they noticed similar discoloration in the form of "blotches of brownish stain." (Compl. at ¶ 36). Based on these observations, plaintiffs never attempted to use the cookware. (Compl. at ¶ 38). The following month, plaintiffs purchased a Le Creuset 3 Quart Casserole with Lid, a Le Creuset 1.75 Quart Saucepan with Lid, a Le Creuset 2 Quart Heart saucepan with Lid, and a Le Creuset 1.25 Quart Saucepan with Lid. (Compl. at ¶ 39). Plaintiffs claim that they noticed the same "blotches of brownish stain" on the new items of cookware upon removing them from the box, and therefore never used any of them. (Compl. at ¶¶ 41, 43). Plaintiffs do not allege that they attempted to return any items to either Le Creuset or Williams-Sonoma. (11/15/18 Tr. at 4:2-12).

The complaint asserts claims of negligence, strict products liability, breach of contract, breach of express warranty, breach of implied warranty of merchantability, unjust enrichment, and a violation of the New York State Deceptive Acts Law, Gen. Bus. Law § 349. (Compl. at ¶¶ 47-92). Plaintiffs claim that they "had been preparing, cooking and eating food that was infused with rust from the corroded cookware," but do not allege any specific physical injuries that resulted from doing so. (Compl. at ¶ 44). Instead, plaintiffs' damages consist of "pain and suffering, and

mental anguish, severe distress, and [that they were] compelled to expend diverse sums of money." (Compl. at ¶¶ 54, 63, 68, 72, 79, 91). The complaint seeks judgment on each claim "in an amount, not less than $75,000.00[.]" (Compl. at Wherefore Clause, p. 17).

At the pre-motion conference on November 15, 2018, I allowed plaintiffs to make a proffer as to what they would add to the complaint, if permitted to amend it. (11/15/18 Tr. at 14:10-11). Plaintiffs stated that they would add that they relied on advertising material from the Williams-Sonoma website that they accessed in New York and that they purchased the Le Creuset products in a Williams-Sonoma store in New York. (11/15/18 Tr. at 14:12-15:5). Counsel for plaintiffs further expanded on their monetary damages at the conference by stating that "medical bills are going to be, a few thousand dollars they've spent so far," (11/15/18 Tr. at 7:12-20), and that they would seek the costs associated with replacing the allegedly defective cookware and the cost of eating out at restaurants for a family of four. (11/15/18 Tr. at 4:24-5:3, Plaintiff's Memorandum in Support of Motion, Dkt. No. 21, at 3; Plaintiff's Reply Memorandum, Dkt. No. 24, at 3-4). Finally, if permitted to amend their complaint, plaintiffs on reply state that they would include a claim for medical monitoring. (Reply, Dkt. No. 24, at 3). I accept the factual proffers made by counsel at the pre-motion conference in support of subject matter jurisdiction. I will also consider the proffer in plaintiffs' reply brief that, if permitted to amend the complaint, they would add a claim for medical monitoring.

## SUBJECT MATTER JURISDICTION

"[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*. If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000) (citations omitted). Plaintiffs conceded at the pre-motion conference that despite alleging that

jurisdiction was proper under 28 U.S.C. § 1331 in the Complaint, there is no "federal question" in this matter. (11/15/18 Tr. at 3:7-11). Thus, plaintiffs invoke the court's jurisdiction based solely on diversity of citizenship. (11/15/18 Tr. at 3:10-16). Under 28 U.S.C. § 1332(a), for federal jurisdiction to exist based on diversity of citizenship, the amount in controversy must exceed $75,000. As the party invoking the jurisdiction of this court, plaintiffs have "the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994). The burden is "hardly onerous," because "[the Second Circuit] recognize[s] 'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.'" *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (quoting *Wolde–Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)).

Where, as here, the face of the complaint alleges an amount in controversy in excess of $75,000, in order to rebut the presumption, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). If "under applicable law, the damages claimed are not recoverable, or when the damages claimed, even though recoverable, cannot as a matter of law exceed [the jurisdictional amount]," dismissal for lack of jurisdiction is proper. *Deutsch v. Hewes St. Realty Corp.*, 359 F.2d 96, 100 (2d Cir. 1966) (internal citations omitted). In assessing the amount in controversy, "a plaintiff is permitted to aggregate claims in order to satisfy the amount in controversy requirement." *Wolde-Meskel v. Voc. Inst. Proj. Comm. Serv.*, 166 F.3d 59, 62 (2d Cir. 1999).

## CALCULATION OF DAMAGES

I address below whether the specific claims for damages sought by plaintiffs are recoverable, and if so, in what amounts.

### I. Physical Injuries

Plaintiffs do not allege any specific physical injuries as a result of the allegedly defective cookware. When asked whether medical testing identified any evidence of injury caused by the cookware, plaintiffs conceded that "the blood work hasn't revealed anything." (11/15/18 Tr. at 5:4-7). While, as discussed below, plaintiffs separately seek medical monitoring in this action based on a fear that they may later develop a physical injury, the amount in controversy is established on the date the complaint is filed and "is not reevaluated based on post-filing events." *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 507 (2d Cir. 2005). As of the date of the filing of the complaint, plaintiffs have alleged no physical damages for which they could be compensated.

### II. Medical Bills

Though plaintiffs do not allege that they were physically injured, they do allege that they incurred medical bills as a result of the allegedly defective cookware. Plaintiffs assert that they spent thousands of dollars on medical tests and treatment in the form of "seeing doctors, including to treat the mental distress symptoms, that plaintiffs have been dealing with." (Reply, Dkt. No. 24, at 3; 11/15/18 Tr. at 4:24-5:3). Assuming for the purposes of determining the amount in controversy that plaintiffs would be entitled to recover these costs, counsel for plaintiffs at the pre-motion conference stated that "medical bills are going to be, a few thousand dollars they've spent so far." (11/15/18 Tr. at at 7:12-20). Though plaintiffs do not quantify what they mean by "a few," I interpret it, generously, to mean $5,000.

## III. Medical Monitoring

On reply, plaintiffs state that, if given the opportunity to amend their Complaint, they would add a claim for medical monitoring. (Reply, Dkt. No. 24, at 3). Any amendment to allege an independent claim for medical monitoring would be futile; and plaintiffs could not recover any damages related to medical monitoring in relation to any other claim they have pled.

In 2013, the New York State Court of Appeals concluded that policy considerations "militate against a judicially-created independent cause of action for medical monitoring." *Caronia v. Philip Morris USA, Inc.*, 22 N.Y.3d 439, 452 (N.Y. 2013). Accordingly, I find that plaintiffs could not amend the complaint to allege a new stand-alone claim for medical monitoring under New York law, as such an amendment would be futile.

Even liberally reading plaintiffs' position to seek medical monitoring as consequential damages related to the tort claims already alleged in the Complaint, such damages would not be recoverable. "In order to recover 'medical monitoring costs following exposure to a toxic substance. . ., a plaintiff must establish both that he or she was in fact exposed to the disease-causing agent and that there is a 'rational basis' for his or her fear of contracting the disease. . . . This 'rational basis' has been construed to mean the clinically demonstrable presence of [the toxic substance] in the plaintiff's body, or some indication of [toxin]-induced disease, i.e., some physical manifestation of [toxic] contamination." *Allen v. Gen. Elec. Co.*, 32 A.D.3d 1163, 1165 (4th Dep't 2006) (alteration in original) (quoting *Abusio v. Consolidated Edison Co. of N.Y.*, 238 A.D.2d 454, 454–55 (2d Dep't 1997), *lv. denied* 90 N.Y.2d 806 (N.Y. 1997)). Plaintiffs do not allege that there is either a clinically demonstrable presence of any toxic substance in their bodies, or that there has been a finding of any indication of a toxin-induced disease. On the contrary, they acknowledged the absence of such evidence on the date the complaint was filed.

## IV. Defective Cookware

Plaintiffs allege that they are entitled to recover the costs not only of the initial defective cookware, but the costs of an additional five pieces of Le Creuset cookware that were later purchased and never used. Plaintiffs do not allege that they ever attempted to return any defective cookware to Le Creuset or to Williams-Sonoma and have provided no information regarding the price of the purchased cookware. Defendant Le Creuset represented in opposition that all six pieces of cookware cost no more than $5,000, (Defendant Le Creuset's Memorandum in Opposition, Dkt. No. 22, at 4), which plaintiffs do not challenge on reply. Crediting that representation, and assuming plaintiffs are able to recover for all six pieces of cookware purchased, I find that they would be able to recover no more than $5,000.

## V. Gen. Bus. Law § 349

In addition to their common law claims, plaintiffs sue under New York's General Business Law, which contains a provision declaring deceptive commercial acts and practices to be unlawful. According to the statute, the maximum monetary recovery for treble actual damages is $1,000, and it is only available following a judicial finding that the defendant willfully or knowingly violated the statute. N.Y. Gen. Bus. Law § 349(h). Assuming each plaintiff could recover the maximum amount permitted under this section against each defendant, plaintiffs' recovery would be at most $4,000.

## VI. Attorney's Fees

Plaintiffs' Complaint also seeks costs, expenses, and reasonable attorney's fees. (Compl. at Wherefore Clause, P. 17). In New York, it is well settled that legal fees are not recoverable unless provided under the terms of a contract or authorized by statute. *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 3 N.Y.3d 592 (N.Y. 2004). Plaintiffs do not allege that any contract

between them and defendants provided for the provision of attorney's fees to the prevailing party. As to the common law claims based on New York State law, attorney's fees therefore cannot be included in a calculation of the amount in controversy. Plaintiffs' seventh claim, under N.Y. Gen. Bus. Law § 349, however, explicitly contemplates an award of attorney's fees. The statute provides that "[t]he court may award reasonable attorney's fees to a prevailing plaintiff." N.Y. Gen. Bus. Law § 349(h). However, because the award of attorney's fees under N.Y. Gen. Bus. Law § 349 is discretionary, and not mandated by statute or contract, "the fee award may not be considered in determining whether a plaintiff's claim exceeds the jurisdictional minimum." *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 166 F. Supp. 2d 740, 756 (E.D.N.Y. 2001); *accord Trapanotto v. Aetna Life Ins. Co.*, 1996 WL 417519, at *9–10 (S.D.N.Y. July 25, 1996); *Colon v. Rent–A–Center, Inc.*, 13 F.Supp.2d 553, 561 (S.D.N.Y. 1998). I therefore will not consider attorney's fees in calculating the amount in controversy.

### VII. Eating Out at Restaurants

Plaintiffs allege that as a result of discovering the discoloration in the Le Creuset cookware, they have been forced to eat out at restaurants. They seek damages in the form of reimbursement for the difference in cost between eating at home and eating out. (Plaintiff's Memorandum in Support of Motion, Dkt. No. 21, at 3, Tr. 4:20-5:3). I find that there is no causal connection between six pieces of defective cookware and a need for plaintiffs' family to eat out at restaurants. Plaintiffs would not be able to recover for such damages as they do not "result[] directly from and as a natural consequence of the wrongful act according to common experience and in the usual course of events." *Steitz v. Gifford*, 280 N.Y. 15, 20 (N.Y. 1939). Put bluntly, there is simply no connection between a defective piece of cookware and the claimed need to eat in restaurants.

Obviously, they could have eaten at home using non-defective cookware from another manufacturer.

## VIII. Emotional Damages

Plaintiffs allege emotional damages in the form of "pain and suffering, and mental anguish, severe distress" as a result of the allegations in the Complaint. (Compl. at ¶¶ 54, 63, 68, 72, 79, 91). When pressed for specific information regarding damages at the pre-motion conference, counsel elaborated only that "their relationship has deteriorated" and that there is "some value" to "the damages that also they have incurred to their relationship with their children and their ability to function as a normal family unit[.]" (11/15/18 Tr. at 5:10-16). The complaint does not allege that plaintiffs sought any medical treatment for their emotional damages. At the pre-motion conference, in response to questioning about damages, plaintiffs stated that they were able to reach the jurisdictional threshold with "the expenses they have incurred by seeing doctors, medical tests to trace whether or not -- check for elements of nickel in their blood." (11/15/18 Tr. at 4:24-5:2). On reply, plaintiffs now assert that with that specific, direct quote, plaintiffs proferred "that they have been seeing doctors, *including to treat the mental distress symptoms*, that plaintiffs have been dealing with." (Reply, Dkt. No. 24, at 3) (emphasis added). Plaintiffs further claim the medical bills totaled "a few thousand dollars." (11/15/18 Tr. at 7:12-14).

As discussed above, plaintiffs' sustainable damages for medical treatment, deceptive practices, and replacement of the cookware are limited to no more than $14,000. Here, there is an admitted lack of physical injury at the time the complaint was filed, an admission that medical tests do not show the presence of any toxic substances, and only a modest sum expended for mental health treatment—only some part of the "few thousand dollars" spent on medical bills in total. I

9

therefore find that an award of more than $61,000 in pain and suffering would not be reasonable or sustainable.

## CONCLUSION

Based on these circumstances, it is clear to a legal certainty that damages claimed by plaintiffs are either not recoverable, or to the extent recoverable, cannot as a matter of law exceed $75,000. Therefore, the instant complaint does not provide a basis for jurisdiction pursuant to 28 U.S.C. § 1332.

The case is dismissed without prejudice for lack of subject matter jurisdiction.

SO ORDERED.

/s/ *Nina Gershon*

**NINA GERSHON**
**United States District Judge**

**Dated: February 25, 2019**
**Brooklyn, New York**